Andrew J. GIBSON and Pacific Indemnity
Company, Plaintiffs,

v.

UNITED STATES of America,
Defendants.

Civ. A. No. 1384.

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 24, 1958.

Charles A. Beasley, Ft. Smith, Ark.,
for Gibson.

Shaw, Jones & Shaw, Ft. Smith, Ark.,
for Pacific Indem. Co.

Charles W. Atkinson, U. S. Atty.,
Robert L. Johnson, Asst. U. S. Atty.,
Ft. Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Findings of Fact

**1.**

The plaintiff, Andrew J. Gibson, is a
citizen and resident of Franklin County,
Arkansas. The plaintiff, Pacific Indemnity Company, is a corporation authorized to do business in the State of Arkansas. The defendant is the United
States of America.

**2.**

The collision involved in this action
occurred on September 23, 1957, about
7:30 p. m. on Highway 22 in Charleston,
Arkansas. At the place where the collision occurred Highway 22 runs east
and west, and some distance east of the

place of collision Highway 22 is intersected by Hancock Street which runs north and south. The courthouse is located on the south side of Highway 22 and diagonal parking is permitted along that side of the highway. At the time of the collision several automobiles were parked on the south side of the highway. Two service stations and a hatchery are located on the north side of Highway 22, and on that side of the highway only parallel parking is permitted.

The highway is approximately 60 feet wide, the north half being 30 feet 5 inches wide, and the south half being 29 feet 8½ inches wide. When cars are parked at an angle on the south side of the highway, the clearance remaining between the rear of the cars and the center of the highway is approximately 15 feet 7 inches.

At the time of the collision the surface of the highway was concrete, and the center of the highway had been marked with a dashed white line. However, the white line was obliterated to a large extent by oil tracked along the highway from nearby construction work.

### 3.

Immediately prior to the collision the plaintiff, Andrew J. Gibson, had been attending to some business at Moore's Hatchery, where he was employed, and had parked his car on the west side of Hancock Street about 40 or 50 feet north of Highway 22. After completing the business, he returned to his car and started driving in a southerly direction toward Highway 22. Upon reaching Highway 22, he made a wide turn to the right or west going toward his home. He did not stop at the intersection with Highway 22, but merely slowed down. He proceeded west on Highway 22, driving fairly close to the center line of the highway at a speed of about 15 miles per hour for approximately 100 feet before the collision involved herein occurred.

### 4.

The other vehicle involved in the collision was a 2½ ton Army truck being driven by John Smith, an enlisted man stationed at Fort Chaffee, Arkansas. The truck was the fourth vehicle in a 15-vehicle military convoy which was traveling in an easterly direction on Highway 22. Upon reaching the town of Charleston the convoy slowed its speed to approximately 15 to 20 miles per hour and proceeded through the town. As Smith's truck approached the intersection of Hancock Street and Highway 22, it was being driven mostly in the south lane of traffic, but at least a foot or a foot and a half of the left side of the truck was extending over the center line of the highway. Apparently Smith either was not paying close attention to where he was driving, or he was driving as far to the left as he could because of fear that one of the automobiles parked at an angle on the south side of the highway might back out in his path. Actually, Smith had ample clearance to drive his truck completely on his right or south side of the highway.

### 5.

As the plaintiff's car and the truck driven by Smith approached each other, the former traveling in a westerly direction and the latter traveling in an easterly direction, the drivers continued driving on a comparative straight course until their vehicles collided. It was dark and the headlights of both vehicles were burning. The point of impact was between the left front of plaintiff's car and the left front of the truck driven by Smith. The exact point on the highway of the impact was approximately 28 inches north of the center line. Immediately prior to the impact neither Gibson nor Smith attempted to turn or swerve to the right to avoid the collision, although each of them had adequate room to turn to the right and to prevent the collision.

After the impact Gibson's automobile traveled about 30 feet in a northwesterly direction, and came to a stop in the north half of the highway. The Army truck driven by Smith traveled about 60 feet straight down the highway and came to a stop with the left rear of the truck

about 18 inches over the center line of the highway.

6.

Plaintiff's automobile was a 1955 Ford. The difference in the fair market value of the automobile immediately before and immediately after the collision was $789.23. Gibson had collision insurance with the plaintiff, Pacific Indemnity Company, and the latter paid Gibson $739.23 under its policy.

7.

The Government's truck was also damaged in the collision. The difference in the fair market value of the Government's truck immediately before and immediately after the collision was $166.95.

8.

As a result of the collision Gibson sustained a severe sprain of his left shoulder and a severe sprain of his right forefinger. He incurred medical expenses in the sum of $166 as a result of his injuries and lost the sum of $300 in earnings. He had a substantial amount of pain connected with the injuries, and at times the pain was severe enough to require him to take codeine for relief. His medical treatment continued from the time of the collision until February of 1958. By that time he had recovered substantially from the injuries but still had some pain and discomfort when he attempted to do heavy lifting or certain types of hard work. At the time of the trial, July 23, 1958, he had almost completely recovered but still had pains occasionally, and particularly upon doing hard labor or heavy lifting. These occasional pains will continue for an indefinite time in the future.

Discussion

Little need be said concerning the rules of law to be applied in this case. Gibson and Smith each had a duty to keep a lookout for other vehicles upon the highway and to keep his own vehicle under reasonable control. Kisor v. Tulsa Rendering Co., D.C.W.D.Ark., 113 F.Supp. 10, 17. It was also the duty of each of them to drive upon the right half of the

highway. Ark.Stat.Ann. Secs. 75–607 & 75–608 (1947). And most important of all each driver had a duty to exercise ordinary care for his own safety and for the safety of others traveling upon the highway.

When the conduct of Gibson and Smith is measured by the above standards, it becomes quite evident that neither of them exercised ordinary care under the circumstances. Smith was guilty of negligence in driving the truck over the center line of the highway and in failing to turn to his right in an effort to avoid the collision. On the other hand, Gibson was guilty of contributory negligence in continuing down the highway on a straight course when he had ample room and ample time to turn to the right to avoid the collision. The conclusion is inescapable that neither Gibson nor Smith was keeping a proper lookout at the time of the collision.

Under the Arkansas comparative negligence statute, Ark.Stat.Ann., Secs. 27–1730.1 & 27–1730.2 (1957 Supp.), Gibson cannot recover in this case if his contributory negligence was equal to or exceeded the negligence of Smith. However, if Gibson's contributory negligence was less than that of Smith, Gibson would be entitled to a verdict, but his damages would be reduced in proportion to his contributory negligence. While it is always difficult to determine with any degree of certainty the percentage of negligence attributable to two parties involved in a collision, the court in the instant case is convinced that the percentage of negligence attributable to Gibson was 30 percent and that his recovery should be reduced by that amount.

The measure of damages for Gibson's personal injuries is such a sum as will reasonably compensate him for the pain, suffering, and mental anguish he has incurred and will incur in the future; loss of earnings; and medical expenses he has incurred. Kisor v. Tulsa Rendering Co., supra, at page 10 of 113 F.Supp. A consideration of all the evi-

dence convinces the court that the total amount of damages sustained by Gibson by reason of his personal injuries is $2,000. Since the court has found that his recovery in this regard should be reduced by 30 percent, the net recovery of Gibson for his personal injuries will be $1,400.

 The measure of damages for the loss to Gibson's automobile is the difference in its fair market value immediately before and immediately after the collision. Southern Lumber Co. v. Thompson, D.C.W.D.Ark., 133 F.Supp. 92, 100. The court has found this amount to be $789.23, which amount must be reduced by 30 percent, leaving a net recovery by Gibson for the damage to his automobile to be $552.46. By reason of its subrogation rights the plaintiff, Pacific Indemnity Company, is entitled to recover said amount of $552.46 from the defendant.

Since Smith's negligence was greater than the negligence of Gibson, the United States is not entitled to recover for the damage to its truck.

## Conclusions of Law

### 1.

The court has jurisdiction of the parties and subject matter herein.

### 2.

The defendant's driver, John Smith, was guilty of negligence which was a proximate cause of the collision and resulting damages sustained by plaintiffs.

### 3.

The plaintiff, Andrew J. Gibson, was guilty of contributory negligence. The amount of negligence attributable to Gibson was 30 percent, and his recovery, as well as the recovery of his co-plaintiff, Pacific Indemnity Company, must be reduced by said amount.

### 4.

The total damages sustained by plaintiff, Andrew J. Gibson, for his personal injuries was $2,000, and said amount should be reduced by 30 percent, leaving Gibson entitled to a judgment against the defendant in the sum of $1,400.

### 5.

The total damage sustained by Gibson to his automobile was $789.23, and said amount should be reduced by 30 percent, leaving the net amount due Gibson to be $552.46. By reason of its subrogation rights plaintiff, Pacific Indemnity Company, is entitled to this recovery, and a judgment should be entered in favor of Pacific Indemnity Company and against the United States in the sum of $552.46.

The counterclaim of defendant should be dismissed.

A judgment in accordance with the above should be entered.